Thank you, Your Honor. My name is Jim Obie. I represent the appellant Jeffrey Milliron at the district court level and also throughout this appeal. My voice is somewhat an issue this morning, so I'm not sure how much I can continue. I will have a short opening statement, though, Your Honor. This case revolves around a Social Security disability dispute. My client admitted that he presented a letter saying he was not married when, in fact, he was married to a Jimmy Papa called a Dukas to obtain benefits. He readily admitted that he was married. There are some very strict requirements for obtaining a Social Security disability. Jimmy, his wife, has been disabled for many years. She was receiving different benefits ranging from $200 a month up to $700 a month. These people were married in 2006. About 2010, there's an article in a newspaper talking about Jamie's wrestling career, and it mentioned that she was married, so an investigation None of this is relevant, is that right? I mean, the question is whether it's a calculation of a particular amount of money, and why don't we just get to that. Thank you, Your Honor. The determination for qualifying for SSI revolves around a $3,000 asset that the parties are limited to. Why does it? I thought all that was before us was the restitution award and the terms, and once he's conceded that she wasn't entitled to disability and that he helped her get the disability, what does it matter whether he might have contested the no disability determination because his assets were too scanty? Your Honor, I think the entire area of restitution, was there a loss to the government, and was it proven to the satisfaction of the court that there was a specific loss? Oh, I see, so you're basically re-litigating the question of her entitlement to the social security she received in the guise of there's no loss to the government because if all the facts had been revealed... That's correct, Your Honor. You're not contesting. He did lie, and it was a material lie, and the conviction is not the problem, right? That's correct, Your Honor. We're not contesting the conviction. It's only the amount of restitution. Was there a loss to the government? And we maintain there was not a loss to the government based on three main issues. The first thing that was looked at in the investigation to determine the loss was bank accounts. The bank accounts of the married couple were looked at, and the balance in the accounts were as high as $1,169 a month, and that's over a period of time. Well, wait a second. Didn't the district court rely only on the cars? The cars were an issue, plus I think the bank account was also relied on, Your Honor. If we concentrate on the car issue, I presented a number of tables in my brief that I tried to lay out very clearly what cars were involved, and Table 1 was a summary of the Department of Motor Vehicle Records. These were any vehicles that were titled in Milt Iron's name over the years, and as the court can see, there's several vehicles there over the years. Some were still being licensed. There was a Pontiac Firebird not being licensed, and these same vehicles show up over and over again. I couldn't quite follow the arithmetic. Actually, I couldn't get one of the sums to work out. That looked like Agent Hanson made an arithmetic error. Are you saying that in any of the years that she got Social Security, the total of the bank account and whatever cars were owned that year was under $3,000? Yes, I am, Your Honor, and if you look at these different tables, I think it becomes very clear. I don't think any of the tables laid it out that way. Did they add 2,000 and X total car – total value of cars owned plus bank account that year? That's correct, Your Honor. Those were not clearly laid out because the car values are so – I guess you can argue these car values different ways. Social Security will throw out the highest car value. They won't count that highest car value against the claimants. Is it one or two? One vehicle. Help me on something. The cars, some of them look like old junkers. In my town, some people like to decorate their lawn with old junkers, and some of them they own. Many they've let the registrations lapse, and many a friend dropped off and said, if you can ever fix it, it's yours, and it's just kind of confusing to say what's their cars. I couldn't figure out whether this was the same thing. I think that's exactly what happened in this case. Mr. Milne was taking junk vehicles in in payment for his tattoo services, and he would junk these things out. Did somebody get a tattoo and give him an old junker? That's correct, Your Honor. He was doing what he called a Christian ministry, helping recovering alcoholics and drug addicts. But when Social Security looks at the vehicles, they'll throw out the highest car value. Next, if you're self-employed, they will take out that car value also. So you are left – Do cars credit? Correct, Your Honor, for a self-employed person. So even on Table 1, if we throw out two car values, there's roughly $2,000 left in that number. Isn't there also an issue as to when – I mean, in order to be ineligible, it's a rolling question. In other words, you can't take all of the cars that he ever owned over this time period. The question is, what did he own at any particular time? Because if there was not any over $3,000 at a particular time, then she would have been eligible for benefits at that time. That's correct, Your Honor. And is there any way to figure that out from what we've got? Your Honor, I believe that Table 3 that I have listed, Jeffrey Milliron applied for disability benefits on his own in 2011, and he listed at that time the vehicles that he owned, not talking to DMV or anything else. He listed three vehicles. He listed $1,000 for a Firebird. He listed a 98 Tahoe, which continually shows up in all the reports for a value of $3,300. And he listed a 94 Ford truck, which also shows up on all the other tables in this case, Your Honor. So if we take those vehicles and throw out two vehicles, he's left with $1,000 Firebird, which may or may not be that value because it was never really determined. That's the NADA Blue Book value without taking into account conditions or anything else. So if you add up $1,000 plus $2,000 high point for a checking account over a period of many years, you're still under that $3,000 limit, and that's been our whole dispute in this argument, Your Honor. And what argument are you making with respect to the bank account? Is there enough evidence in the record to establish that the bank levels were within the proper amount going back far enough? Your Honor, I think the high account in the bank was $1,169 per month. Isn't the problem there that there are numbers for certain times but not other times? Correct, Your Honor. When you deposit your $700 Social Security check, yes, you're going to have a pretty good balance in that account. And if you haven't paid your bills yet, maybe you had money left over from the previous month. So that bank account is flying all over the place. Quite aside from that, it doesn't cover the entire period. In other words, the bank account, do we have bank account statements for the entire period, just for about a year? The investigation, I think you only have 15 months, 15 sporadic months spread out. So whose problem is that? Is that your problem or the government's problem? I guess I would present it as the government's problem, proving by a preponderance of the evidence what the numbers that we can rely on. So you're saying that the burden would be on the government because they have to prove loss rather than the burden being on you because you have to prove that the $3,000 is more than the assets? Your Honor, I think the government has to come forward with the proof and certainly we are entitled to rebut it, which I believe I've done in my briefs here. Your contention is you have to, the government has to meet this $3,000 plus requirement month for month for month, and if in a given month it was below $3,000, then there's no liability? I think in the big picture, Your Honor, it's hard to piecemeal this out month by month, but I think in the big picture we've shown our case that the amount of loss has not been proven. Excuse me. If it's not month by month, what is it, year by year, what is it? I may have to correct myself. It is a month-by-month basis. We'd have to go each month for a period of time from 2004 through 2011, I believe. Well, we'll ask Mr. Roscoe about that. Thank you. I'd like to reserve some time. You've got 53 seconds, counsel. Thank you. We'll hear from the U.S. Attorney. Good morning, Your Honors. May it please the Court. My name is Tim Roscoe. I'm an Assistant United States Attorney in the Missoula Office for the District of Montana. Help me on a consequence of where the case is now. It looked to me as though if this fellow's wife, Mill Iron's wife, leaves him or gets committed, I gather she's mentally ill and that's why even though she's got the Social Security disability, you're not prosecuting her. If she leaves him or if she gets committed or if she dies, all of Mr. Mill Iron's Social Security disability gets taken to be applied to the restitution and he then is unable to work and his income will be zero. Is that correct? I think that's accurate, Your Honor. I'm not completely certain of that, but I think that's accurate. How can that be right for a restitution calculation for a man with a real disability to get nothing? Well, that's, Judge. How's he going to stay alive? That's been one of the curious factors about this entire case is the sort of, I don't know if disconnect is the right word, between the fact that Ms. Papakaladoukas was the beneficiary in this case, but Mr. Mill Iron ends up being convicted. It is peculiar because I'm trying to figure out how he's going to stay alive. I don't know that I can answer that question, to be honest, Your Honor. Doesn't the district judge, when he calculates the restitution payments, have to figure out how much can be paid on what terms so that the person sentenced doesn't die of exposure or starvation? I mean, I don't know what the guy's going to do except live under a bridge and scrounge for scraps from dumpsters if his wife leaves him or gets committed or dies. Well, as a practical matter, as we sit here today, it's my understanding Mr. Mill Iron is still in custody because he got his probation revoked after he was sentenced to probation in the first place. Oh, so he can get supported by being in jail. Well, not indefinitely, no. I don't think that's the perfect answer to your question. I think until the evidence was presented to us in the record, it was not my understanding that that's how Social Security operated. I didn't know. Is that the only way he can get three squares and a bed is by being in jail? To be honest, I don't know. I don't know whether that's – I guess to answer your question, I don't know whether that's a determination for the district court at the time of sentencing given the law surrounding restitution or whether that's a question for the agency that determines you, Mr. Mill Iron, are disabled on your own account. Well, no, it's got to be for the court because the court says you pay $50 a month or $100 a month or $150 a month or your whole check until the $34,000 is paid off. And I think the court here said the whole check until the $34,000 your wife got is paid off. Well, the court dictated a monthly amount in consultation with probation, but I don't think the court dictated in the judgment that it had to come from Social Security benefits. I think it's the agency's determination to garnish benefits. I don't think that's something the court ordered. In terms of how you figure out the restitution amount, does the government have the burden of demonstrating that for each period that they're claiming that there was an overpayment, that there was, in fact, the requisite income and resources? Yes, it's our burden. Well, have you done that for each period? I don't see how. Well, I think the issue, and because I'm – Because I understand what you've done is you have looked at 15 months of a bank account. And what, just guessed that it would be the same for other months? No, I think, Judge, that the bank account information was really just sort of another factor. I think you hit the nail on the head that the real focus here for the agency's perspective. So we should forget about the bank accounts? No, I don't think forget about it. Your contention, I suppose, which is in dispute, is that the cars alone are worth $3,000. Isn't that right? Correct. All right. Well, suppose we disagree with that, and let's say it comes in at $2,835. You still are short. And your obligation, it seems to me, is to establish that $3,000 was met month by month by month. And if we don't have evidence such as what happened between December 2009 and April of 2010, and I see nothing in the record that shows that, then at least those months have to be offset and we have to remand for resentencing. Do we not? I think that would be, I think, yes, I think that's correct. But I think really, I mean, the focus here today is whether or not Judge Lovell committed clear error in the facts that he found. Now, the problem for the government. Well, he didn't find anything. He didn't even separate the cars and the bank accounts or anything else. He just said $33,000, whatever number it is. Right. He relied on the ultimate figure, but based on all the information that was presented at the sentencing. Now, the problem for us, I acknowledge, is that it's snapshots. But as Ms. Koonce from Social Security testified, we'll take additional information at the administrative phase from the beneficiary. If they want to tell us that the car that we say is worth $3,600 is not worth $3,600. Well, it's not that so much, but it's that the cars were, you took every car that was ever mentioned and assumed that they were all there for the whole time period, and the evidence is that they weren't. I'm not sure that you could say that the evidence isn't that they weren't. I mean, that's where the problem, I guess, lies with having a snapshot instead of the complete picture. You're getting it from different reports that were for different purposes. For example, the probation reports were he was told to report any car on his property whether he owned it or not. Right? And you used those cars. I think that's accurate that all of those were used, but the defendant didn't refute that he owned them either. I mean, none of the evidence that was presented to the court. It's the government's burden to make proof of loss. Yes. Isn't that right? Yes. By a preponderance of the evidence, yes. Proof of loss depends on proving that the assets exceeded $3,000 during the time the Social Security paid. Is that right? Yes. And isn't the law that setting the terms of payment of restitution is a non-delegable duty of the district judge? I believe so, yes. So he couldn't delegate it to the Social Security Administration and take their money however they like? No, and I didn't mean to indicate that he had. I guess what I meant to indicate is that in the judgment, my recollection is the judgment says you have to pay X dollars per month, and they usually include a condition that says or. So, you know, the government's number is $3,400 for the cars, right? Well, that's what the testimony was at the record. I've tried to add that up. With any combination of cars, I can't get there. I did too, Judge. As we said in our brief, I come up with the number more akin to 5,100, I think, based on all the vehicles. And I think. I got mixed up trying to do that too. I looked at some of Agent Hansen's calculations, and it looked like he made an arithmetic error. I don't know why it's so hard to add up a few four-digit numbers, but. And I came up with $2,835. In terms of the cars at the time, you have to take into account. The other thing I just didn't get, I could see where, oh, before 1980 or so, it might have been kind of burdensome to do this right. But since they invented personal computers, it seems so obvious to me. My gosh, in 1980, I would have used a VisiCalc spreadsheet, and I would have had a horizontal axis, I suppose. It doesn't matter if it's horizontal or vertical. Here's 2,000X, 2,000Y, 2,000Z, and so forth. And then the vertical axis would have been value of total cars owned that year. It would be easy to do it by month, actually, which would be better. And that would be A. And then the most valuable car would be B. And then the next car, because he gets one for work, would be C. And then the next figure would be cars minus the sum of A and B. And then the next value would be bank account that month. And then the next box would be the adjusted total. And it's just easy to set up a spreadsheet that way, and I don't know why I didn't get one. I think, Judge, that the issue was that the lie occurred in 2010, and then the agency set about to try to look backward three years plus to try to determine assets. And the only way to do that is the information that they had at that time, which was the DMV data, which is probably ever-changing, as the Court has noted. So they're in essence sort of ---- The fact that it's changing means that he doesn't presumably have those cars over the whole time period. Why else is it changing? But I guess, Judge, from our perspective is what we know is what we're able to find at the time. And from the agency's perspective, that's where it's the obligation of the beneficiary to report changes in their circumstances. And the whole point of this case was you didn't report those changes. Had you reported them ---- We understand that. And he's convicted. He didn't, and he's responsible for that. But that doesn't explain why he's being asked for restitution for time periods that you cannot demonstrate that he actually owned these cars. I mean, you just take all the cars that he owned over the whole time period and assume he owned them over the whole time period, and we know he didn't own them over the whole time period. You're right that we assume that he did because ---- And we know he didn't. We know he didn't, as you just said, because even the DMV records show he didn't. I don't know what the DMV records show for you. It just said that they were dropping on and off. It showed different things at different times, different cars at different times. And this is in the record. That they were changing from year to year? I didn't recall that, Your Honor, from being in the record. I thought basically that all we had was a snapshot, that we had the DMV MATIC data from the period in time when the agency was trying to determine whether or not they were eligible. And I think you're hearing some concern from the bench that a snapshot doesn't meet your obligation. I think that's the problem there. But also there was testimony that the cars dropped on and off the records. The person who testified said that. She said the records were changing. The woman from Social Security? Right. So that means that it wasn't continuous over the whole time period. So we can't assume that it was when we know it wasn't. I suppose not, Your Honor. All right. Thank you, counsel. Your time has expired. Thank you, Your Honor. Mr. Obey, you have a fleeting time to summarize. Thank you, Your Honor. I'll speak quickly as to the issue of restitution. The court ordered that restitution be repaid by agreement of an amount with probation. Probation determined $25 a month. Since that time, Mr. Milliron applied for and received a total disability on his own. So he was then receiving $5.33 per month, and Jamie was receiving $5.33 per month. When Milliron was revoked and sent to prison, his Social Security dropped. That $5.33 a month is going directly to Social Security. Mr. Milliron did not see that. Two parties were living on $5.33 a month. When Mr. Milliron went to prison, the amount that Jamie received then went to $7.21 per month. Mr. Milliron served six months. He's back in the community and doing fine. But he has not reapplied for benefits because it costs him $200 a month to do that. Jamie receives $7.21 now instead of $5.33. I mean, it would cost him that because if he got the benefits, it would just be taken to pay off the restitution. Social Security takes the entire amount that he receives. So he would be applying to Social Security for amounts to be paid to Social Security. Correct, Your Honor. And is this all on the record? That is not in the record. I'm sorry, Your Honor. I was answering a question about restitution. Okay. Well, then I think we need to be aware that these are facts, or at least asserted facts, that the judge did not have in front of him at the time. Correct, Your Honor. But the fact that they were taking the entire amount is in the record, is it not? No, Your Honor. That came up after the hearings. He did not qualify for disability until after this hearing. Okay. All right. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Kleinfeld, Berzon